UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TIMM LEWIS MONSON,<br><br>                    Plaintiff,<br><br>     v.<br><br>CORIZON, J&J DOES, SCOTT LOSSMAN, and CYNTHIA HOLMES,<br><br>                    Defendants. | Case No. 1:11-cv-00468-MHW<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court are the following motions: (1) Defendant Lossmann's Motion for Summary Judgment (Dkt. 25); (2) Plaintiff's Motion for Extension of Time (Dkt. 28); (3) Plaintiff's Motion for Rule 56(f) Stay and Compel Discovery (Dkt. 30); (4) Plaintiff's Motion for Addendum, or Addition, to Defendant List and Plea to Court for This Plaintiff's Health and Life (Dkt. 36); and (5) Plaintiff's Motion for Court to Make It's Decision on Summary Judgment (Dkt. 38). All parties have consented to proceed before a United States Magistrate Judge. (Dkt. 39). Having fully reviewed the record and the materials submitted by the parties, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, the Court finds that the decisional process would not be significantly aided by oral argument, so these Motions

**MEMORANDUM DECISION AND ORDER - 1**

will be decided on the record before the Court. *See* Dist. Idaho L. Rule 7.1(d)(1).

## BACKGROUND

Plaintiff is an inmate in the custody of Idaho Department of Correction (IDOC) and is currently housed in the Idaho Correctional Center (ICC). (Dkt. 34.) Prior to his transfer to ICC, Plaintiff was primarily incarcerated at Idaho State Correctional Institution (ISCI) and briefly at South Idaho Correctional Institution (SICI), which are the facilities where he resided during the time period at issue in his Complaint.

In January 2002, Plaintiff was diagnosed with lymphedema and cellulitis in his lower left leg. (Dkt. 3, p.2.) Plaintiff alleges that this is a serious, chronic condition that is managed by medication, physical therapy and certain medical supplies. (*Id.*, pp.2-3.) Upon his arrival at ISCI on January 13, 2011, Plaintiff alleges that he provided ISCI medical staff, including Defendants Lossmann and Holmes, with a list of medical supplies and information for the treatment of his medical condition along with a signed release form to obtain Plaintiff's medical records from his doctor. (*Id.*, p.3.) Plaintiff claims that Defendants Lossmann and Holmes "refused to treat Plaintiff's medical conditions" because they would not order physical therapy, the proper pain medication or the supplies needed to treat his condition; instead Defendant Lossmann prescribed other medication that resulted in adverse side effects. (*Id.*, p.5.) As a result, Plaintiff alleges that his lymphedema condition has worsened and he has suffered "chills and fever, flu-like symptoms, and severe pain, and . . . been made to live with the fear of losing his left leg, nightmars [sic] and other psicological [sic] trauma." (*Id.*)

**MEMORANDUM DECISION AND ORDER - 2**

Based on these claims, Plaintiff filed his civil rights Complaint on October 6, 2011, alleging that Corizon, Scott Lossmann, Cynthia Holmes, and other unnamed John and Jane Does have been deliberately indifferent to his serious medical condition in violation of the Eighth Amendment. (*Id.*, p.6.) On December 23, 2011, the Court entered its Initial Review Order permitting Plaintiff to proceed only against Defendants Lossmann and Holmes. (Dkt. 10, p.4.)[1] However, on October 17, 2012, the Court dismissed all claims against Defendant Holmes without prejudice because of Plaintiff's failure to provide a service address for Defendant Holmes. (Dkt. 23.) Following the close of discovery, Defendant Lossmann timely filed the instant Motion for Summary Judgment. (Dkt. 25.) Thereafter, Plaintiff filed his Motion for Extension of Time (Dkt. 28), Motion for Rule 56(f) Stay and Compel Discovery (Dkt. 30), Motion for Addendum, or Addition, to Defendant List and Plea to Court for This Plaintiff's Health and Life (Motion to Amend) (Dkt. 36), and Motion for Court to Make It's Decision on Summary Judgment. (Dkt. 38.)

## DISCUSSION

The Court will first rule on all of Plaintiff's procedural motions, followed by Defendant's Motion for Summary Judgment.

---

[1]As to Defendant Corizon, the prison's private medical provider, the Court held that Plaintiff may not pursue his policy-based claims against Corizon unless he first presents sufficient evidence at the summary judgment stage to proceed to trial against any individual Defendant for his or her constitutionally inadequate medical care. (Dkt. 10, p.5.) In light of the Court's decision *infra*, Plaintiff will not be permitted to proceed against Defendant Corizon.

**MEMORANDUM DECISION AND ORDER - 3**

**1. Plaintiff's Motion for Extension of Time (Dkt. 28) and Motion for Rule 56(f) Stay and Compel Discovery (Dkt. 30)**

Per the terms of the Order entered October 17, 2012, the discovery deadline in this case was extended to November 9, 2012, and Defendant's dispositive motion deadline was extended to December 10, 2012. (Dkt. 23.) Defendant Lossmann timely filed his Motion for Summary Judgment on December 10, 2012, and Plaintiff's response was due on or before January 7, 2013. *See* Dkt. 25. On January 8, 2013, Plaintiff filed a Motion for Extension of Time and requested that he be given until January 23, 2013 to file his response to the Motion for Summary Judgment. (Dkt. 28, p.2.) Plaintiff argues that the additional time is needed to obtain medical photos from St. Luke's Elks Wound Clinic and missing medical records regarding a March 2012 stay at St. Alphonsus Hospital, which Plaintiff claims Defendants have repeatedly refused to provide but are necessary for him to prepare an adequate response that supports his allegations and shows the extent of his injury. (Dkts. 28-1, p.1; 32, p.2.) Defendant Lossmann did not oppose the extension of time, but did object to the basis for the Motion. Defendant Lossmann maintains that Plaintiff never requested (through discovery requests or otherwise) that Defendant Lossmann produce the aforementioned photos or missing medical records, and further argues that the medical photos and records Plaintiff is seeking are irrelevant to the pending Motion for Summary Judgment. (Dkt. 29.)

On January 28, 2013, Plaintiff filed his Motion for Rule 56(f) Stay and Compel Discovery and reiterated his request that Defendants turn over "forty (40) to fifty (50)

pictures of his lower extremity, and all other records from Plaintiff's March 2012 stay at St. Alphonsus Hospital, and any other records and pictures that defendants have." (Dkt. 30, p.1.) Plaintiff maintains he asked for these documents in "discovery requests, concern forms, and by letter to defendants attorney, but defendants continue to remain silent." (*Id*.) Plaintiff did not provide the Court with any of these purported discovery requests or concern forms, but Plaintiff did attach one letter addressed to Defendant's attorney dated January 3, 2013, wherein Plaintiff informs Defendant's attorney of his intent to file a motion to compel "the discovery you are withholding from me." (Dkt. 30-2, p.2.) Despite Plaintiff's insistence that he "cannot respond adequately" to the Motion for Summary Judgment without these materials, Plaintiff simultaneously filed his Response to Defendant's Motion for Summary Judgment, Statement of Undisputed Facts, and Declaration Under Penalty of Perjury of Timm Monson. (Dkt. 30-2.)

In response, Defendant Lossmann once again contends that Plaintiff never requested these materials from him through discovery, and that the alleged withheld photos and documents are irrelevant to his Motion for Summary Judgment because these materials do not "make any fact more or less true during the relevant timeframe of Plaintiff's allegations . . . within his Complaint . . . [which is] January 2011 through October 6, 2011." (Dkt. 33, p.2.) Defendant Lossmann also argues that Plaintiff has failed to meet and confer regarding the discovery that he has never requested from him. (*Id.*)

Plaintiff's Motion for Extension of Time and Motion for Rule 56(f) Stay and Compel Discovery are flawed for two reasons: (1) Plaintiff has failed to establish that he

**MEMORANDUM DECISION AND ORDER - 5**

served the purported discovery requests upon Defendant Lossmann within the discovery period; and (2) both motions are untimely as they seek to conduct or compel discovery outside the period allowed for discovery. As to the purported discovery at issue, Federal Rule 37 provides a mechanism for a party to move for an order compelling disclosure or discovery if the other party fails to make a disclosure required by Rule 26(a). Fed. R. Civ. P. 37(a)(3)(A). In addition, Local Civil Rule 37.2 requires a discovery motion filed pursuant to Federal Rule 37 to include a "verbatim recitation of each interrogatory, request, answer, response, and objection which is the subject of the motion." Dist. Idaho Loc. Civ. R. 37.2. Plaintiff has failed to comply with these rules; his blanket assertion in both Motions that he has made repeated discovery requests to defendants without providing the Court with any evidence of those requests or Defendant Lossmann's response, objection or lack of response thereto, is not sufficient to support a Rule 37 motion to compel discovery.

Moreover, Defendant Lossmann maintains throughout his objections to both of these Motions that Plaintiff never served these discovery requests upon him in the discovery period. *See Palmer v. Crotty*, 2010 WL 4279423 *1 (E.D. Cal. 2010) (Plaintiff did not submit any evidence that he served discovery requests on defendant; district court held that "if there were no discovery requests served, there is no basis for a motion to compel.") Similarly, although Plaintiff's letter to Defendant Lossmann's counsel dated January 3, 2013, and Plaintiff's accompanying declaration appear to constitute Plaintiff's good faith attempt to meet and confer pursuant to Federal Rule 37(a)(1) and Local Civil

**MEMORANDUM DECISION AND ORDER - 6**

Rule 37.1 (*see* Dkts. 30-1; 30-2, p.2), Plaintiff cannot meet and confer about discovery that was never properly requested within the discovery period. *See* Fed. R. Civ. P. 37(a)(1); Dist. Idaho Loc. Civ. R. 37.1.

As to the untimeliness issue, both of Plaintiff's Motions are belated attempts to conduct or compel discovery two months after the discovery period ended in this case, and more than a month after Defendant Lossmann filed his dispositive motion. A district court has an ongoing obligation to construe and administer the federal rules "to secure the just, speedy, and inexpensive determination of every action and proceeding" (*see* Fed. R. Civ. P. 1); numerous courts within the Ninth Circuit have denied discovery motions filed after the close of discovery because to do otherwise would jeopardize the orderly resolution of that case and disrupt the court's overall management of its busy docket. *See Gerawan Farming, Inc. v. Rehrig Pacific Co.* 2013 WL 492103 *6 (E.D. Cal. 2013) (both parties' motions to compel filed on the last day of discovery deemed untimely because it would result in the court ordering discovery after the cutoff date); *Kizzee v. Walmart, Inc.*, 2011 WL 3566881 *1 (D. Ariz. 2011) (motion to compel discovery made more than three months after the discovery deadline denied as untimely); *Oliva v. National City Corp.*, 2010 WL 1949600 *4 (D. Nev. 2010) (motion to compel filed seven weeks after close of discovery and three weeks after deadline to file dispositive motions denied as untimely). Accordingly, even if Plaintiff had served the purported discovery requests upon Defendant Lossmann within the discovery period, the Court would deny his Motions for Extension of Time and for Rule 56(f) Stay and Compel Discovery as untimely.

**MEMORANDUM DECISION AND ORDER - 7**

For these reasons, the Court will grant in part Plaintiff's Motion for Extension of Time for the limited purpose of extending the time period for Plaintiff to file his response to the Motion for Summary Judgment, but the Court will deny in part Plaintiff's Motion for Extension of Time as to its request for additional discovery from Defendant Lossmann. Plaintiff's Motion for Rule 56(f) Stay and Compel Discovery will also be denied.[2]

### 3. Plaintiff's Motion for Addendum, or Addition, to Defendant List and Plea to Court for this Plaintiff's Health and Life (Dkt. 36)

On March 28, 2013, Plaintiff filed a Motion for Addendum, or Addition, to Defendant List and Plea to Court for this Plaintiff's Health and Life ("Motion to Amend") wherein Plaintiff essentially seeks to amend the Complaint to add three new parties, and requests the Court's assistance in having him transferred from one prison facility to another. Plaintiff provides the names of three more prison officials – Brent Reinke, Rona Siegert, and Johanna Smith – who up to this point have only been identified as John and Jane Doe defendants in this case, and alleges that "in the first nine months of incarceration, Rona Siegert and Johanna Smith, defendants, knew full well the extent of Plaintiff's medical needs . . . [but] have stood idly by and watched Plaintiff's health steadily decline." (Dkt. 36, pp.1-2.) Plaintiff does not make any specific allegations

---

[2]Because Plaintiff's Motion for Rule 56(f) Stay and Compel Discovery is denied for Plaintiff's failure to establish that the purported discovery requests were actually served upon Defendant Lossmann during the discovery period in this case, Defendant Lossmann's substantive argument that the requested medical photos and hospital records are not relevant is moot.

against Brent Reinke. Plaintiff also requests that the Court "help take him out of even more life-threatening danger . . . and get him transported back to IDOC's 'medical facility, ISCI.'" (*Id.*, pp.2-3) Plaintiff contends that prison officials transferred him to ICC to participate in a therapeutic community program, but his life is in jeopardy there because they are forcing him to sit in a classroom for fourteen hours a day which exacerbates his lower extremity lymphedema. (*Id.*, pp.2-3.) Plaintiff did not file a supporting affidavit or memorandum of law.

Defendant Lossmann objects to Plaintiff's belated attempt to amend the Complaint, arguing that Plaintiff's claims against the three newly-named defendants are too vague and conclusory to support a § 1983 claim, and that given the length of time already elapsed in this matter and the pending Motion for Summary Judgment, Defendant Lossmann would be prejudiced if the Court permitted Plaintiff to add new parties at this point. (Dkt. 37.) Plaintiff did not file a Reply Memorandum in response to Defendant Lossmann's opposition.

Federal Rule 15 provides that a party "may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Although amendments to pleadings should be applied with extreme liberality, the proposed amendment must not cause undue delay, be sought in bad faith, constitute an exercise in futility, or cause prejudice to the opposing party. *U.S. v. Webb*, 655 F.2d 977, 979-980 (9th Cir. 1981) (citations omitted). Further, "in cases in which there is a summary judgment motion pending, leave to amend

**MEMORANDUM DECISION AND ORDER - 9**

may be denied unless the plaintiff can make a substantial showing to support the amendment." *Maldonado v. City of Oakland*, 2002 WL 826801 *4 (N.D. Cal. 2002) (citations omitted). A motion for leave to amend may not be used to circumvent the effects of summary judgment. *Glesenkamp v. Nationwide Mut. Ins. Co.*, 71 F.R.D. 1, 4 (N.D. Cal. 1974), *aff'd*, 540 F.2d 458 (9th Cir. 1976) (per curiam).

In this case, the April 27, 2012 Scheduling Order set the discovery deadline for August 31, 2012 (Dkt. 18, p.5), which was later extended to November 9, 2012. (Dkt. 23.) Throughout this extended discovery period, Plaintiff did not seek to amend his pleading to name and serve any of the Jane and John Doe defendants. Rather, Plaintiff has waited until well after the close of discovery and the filing of Defendant Lossmann's Motion for Summary Judgment to now "let it be known" who the Jane and John Doe defendants are, but without any explanation whatsoever as to why he waited 17 months after filing his Complaint to finally identify these three defendants. Based on the record herein and Plaintiff's vague allegations against these three defendants that some or all of them knew about his serious medical condition "in the first nine months of his incarceration", it appears that Plaintiff knew of their alleged involvement and could have easily discovered their actual names at the time he filed his Complaint, or certainly during the ample discovery period. He did not do so, nor has he made a "substantial showing" to support the amendment at this stage of the litigation. *Maldonado*, 2002 WL 826801 *4; *see also Robinson v. Twin Falls Highway Dist.*, 233 F.R.D. 670, 673 (D. Idaho 2006) (Knowing of the facts that form the basis for the proposed amendment prior to the deadline for

**MEMORANDUM DECISION AND ORDER - 10**

amending precludes a finding of due diligence); *Rowen v. New Mexico*, 210 F.R.D. 250, 253 (D.N.M. 2002) (Court denied plaintiff's motion to amend that was filed more than 30 days after pretrial motion deadline and without any reason given for the delay; plaintiff failed to demonstrate diligence in complying with court deadlines and did not explain why he failed to name individual defendants in his § 1983 claims). Plaintiff's motion to add new defendants seems to be a last-minute attempt to avoid dismissal, which is not appropriate, *see Glesenkamp*, 71 F.R.D. at 4, and allowing Plaintiff to do so would prejudice Defendant Lossmann whose timely Motion for Summary Judgment is pending before the Court.

Moreover, at this point, allowing the complaint to go forward against the Jane and John Doe defendants would be futile based on the Court's decision below to grant summary judgment in favor of Defendant Lossmann on the same claim vaguely asserted against the Jane and John Doe defendants. The Court will, therefore, sua sponte, grant judgment in favor of the unserved Jane and John Doe defendants as well. *See Abagninin v. AMVAC Chemical Corp.*, 545 F.3d 733, 742 (9th Cir. 2008) (district court properly granted motion for judgment on pleadings as to unserved defendants where such defendants were in similar position to served defendants against whom a claim for relief could not be stated); *Gomez v. Sogge*, 2011 WL 3156809 *2 (N.D. Cal. 2011) (John Doe defendant dismissed sua sponte from the action because the district court had already granted summary judgment in favor of the defendants on the same claim).

Finally, Plaintiff's Motion to Amend also requests that the Court assist Plaintiff in

**MEMORANDUM DECISION AND ORDER - 11**

getting him transferred out of ICC and back to ISCI, IDOC's "medical facility."

However, the United States Supreme Court has cautioned the federal courts not to

interfere with the day-to-day operations of the prisons, especially those things related to

security, a task which is best left to prison officials who have particular experience in

dealing with prisons and prisoners. *See Turner v. Safley*, 482 U.S. 78, 89 (1987). Prison

regulations governing the placement of inmates in prison facilities are particularly topics

of institutional security. As a result, Plaintiff will be required to work within the prison's

regulations while litigating this case. For all of these reasons, Plaintiff's Motion for

Addendum, or Addition, to Defendant List and Plea to Court for This Plaintiff's Health

and Life will be denied and judgment will be granted sua sponte in favor of the unserved

Jane and John Doe defendants as well.

## 4. Plaintiff's Motion for Court to Make It's Decision on Summary Judgment (Dkt. 38)

On May 21, 2013, Plaintiff filed a Motion for Court to Make It's Decision on

Summary Judgment and requests that the Court "move beyond summary judgement."

(Dkt. 38, p.1.) Plaintiff also includes new allegations of inadequate medical care against

unnamed "medical staff" that purportedly occurred in March and April 2013. (*Id.* pp.1-3.)

Defendant Lossmann filed a Qualified Non-Opposition to Plaintiff's Motion for Court to

Make It's Decision on Summary Judgment Filed May 21, 2013 wherein Defendant

Lossmann does not object to Plaintiff's request for a ruling on the Motion for Summary

Judgment, but does object to all of the new allegations made by Plaintiff concerning his

**MEMORANDUM DECISION AND ORDER - 12**

health care. (Dkt. 40.)

The Court agrees with Defendant Lossmann's argument regarding Plaintiff's new, vague allegations of inadequate medical care. "Unrelated claims that involve different defendants must be brought in separate lawsuits." *Montano v. Solomon*, 2011 WL 2224736 *2 (E.D. Cal. 2011). Plaintiff's Complaint alleges that between January and October 2011, the Defendants, including Dr. Lossmann, were deliberately indifferent to his serious medical condition in violation of the Eighth Amendment. These new allegations of inadequate medical care are unrelated in time and circumstances to the claim of deliberate indifference in this action, and Plaintiff does not allege that Defendant Lossmann was involved in these allegations in any way. Accordingly, Plaintiff's Motion for Court to Make It's Decision on Summary Judgment will be granted in part to the extent that the Court will issue its ruling on Defendant Lossmann's Motion for Summary Judgment in this Memorandum Decision and Order, but Plaintiff's Motion for Court to Make It's Decision on Summary Judgment will be denied in part regarding Plaintiff's additional allegations of inadequate medical care against unnamed medical staff.

### 5. Defendant's Motion for Summary Judgment (Dkt. 25)

In his Motion for Summary Judgment, Defendant Lossmann argues that he is entitled to summary judgment as a matter of law because there are no genuine issues of material fact or evidence demonstrating that he was deliberately indifferent to Plaintiff's medical needs. (Dkt. 25-1, p.2.) Plaintiff opposes this Motion and contends that Defendant Lossmann "delayed and denied Plaintiff treatment for his serious medical

**MEMORANDUM DECISION AND ORDER - 13**

condition." (Dkt. 30-2, p.7.)

**A.** *Standard of Law*

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In a motion for summary judgment, the moving party bears the "initial burden of identifying for the court those portions of the record which demonstrate the absence of any genuine issues of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986)). If the moving party points to portions of the record which demonstrate that there appears to be no genuine issue of material fact as to claims or defenses at issue, the burden of production shifts to the non-moving party. To meet its burden of production, the non-moving party "may not rest upon the mere allegations contained in his complaint, but he must set forth, by affidavits, exhibits or otherwise, specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56; *see T.W. Electric Serv., Inc.*, 809 F.2d at 630 (internal citation omitted). Statements in a brief, unsupported by the record, cannot be used to create an issue of fact. *Barnes v. Independent Auto. Dealers*, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995).

**MEMORANDUM DECISION AND ORDER - 14**

Rule 56(c) requires the Court to enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 377 U.S. at 322. The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby*, 477 U.S. at 252.

To state a claim under § 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To prevail on an Eighth Amendment claim regarding prison medical care, plaintiff must show that prison officials' "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976)). The Supreme Court has opined that "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.*

The Ninth Circuit has defined a "serious medical need" in the following ways:

failure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain; . . . [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.

**MEMORANDUM DECISION AND ORDER - 15**

*McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds*, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).

Deliberate indifference exists when an official knows of and disregards a serious medical condition or when an official is "aware of facts from which the inference could be drawn that a substantial risk of harm exists," and actually draws such an inference. *Farmer v. Brennan,* 511 U.S. 825, 838 (1994). Differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim. *See Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).[3]

Mere indifference, medical malpractice, or negligence will not support a cause of action under the Eighth Amendment. *Broughton v. Cutter Lab*, 622 F.2d 458, 460 (9th Cir. 1980). A mere delay in treatment does not constitute a violation of the Eighth Amendment, unless the delay causes serious harm. *Wood v. Housewright*, 900 F.2d 1332, 1335 (9th Cir. 1990). If the defendants are able to show that medical personnel have been "consistently responsive to [the inmate's] medical needs, and there has been no showing that the medical personnel had "subjective knowledge and conscious disregard of a

---

[3]In contrast, deliberate indifference may be shown if prison medical staff "ignored outside expert advice, relying solely on their own medical judgment for three years before eventually approving surgery," or, whether, after attempting a "medication-only course of treatment [that] may have been medically acceptable for a certain period of time," prison medical staff acted in a "medically unacceptable" and "subjectively reckless" manner when they ignored "a 'long term' recommendation [for surgery] for three years," and ignored "'emergency' and 'urgent' requests for more than two years." *Snow v. McDaniel*, 681 F.3d 978, 988 (9th Cir. 2012) (denial of double hip replacement surgery to death–row inmate whose hips had degenerated so badly he could not walk and was in constant, severe pain was a jury question).

**MEMORANDUM DECISION AND ORDER - 16**

substantial risk of serious injury," a plaintiff's claims may be dismissed by summary judgment prior to trial. *Toguchi v. Chung*, 391 F.3d 1051, 1061 (9th Cir. 2004).

The Eighth Amendment does not provide a right to a specific treatment. *See Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) ("[The plaintiff] is not entitled to demand specific care. She is not entitled to the best care possible. She is entitled to reasonable measures to meet a substantial risk of serious harm to her."). A prison doctor's recommendation for a less costly treatment is not deliberate indifference unless the recommendation "was so inadequate that it demonstrated an absence of professional judgment, that is, that no minimally competent professional would have so responded under those circumstances." *Collignon v. Milwaukee County*, 163 F.3d 982, 989 (7th Cir. 1998).

In *Estelle v. Gamble, supra,* Inmate Gamble suffered a back injury at work when a 600-pound bale of hay fell on him. Doctors and other medical providers at the prison prescribed rest and a variety of medications, including different pain relievers and muscle relaxers. Gamble argued that the medical providers were deliberately indifferent because they should have done more to diagnose his back problem, such as x-raying his back. The Court disagreed, reasoning:

> Gamble was seen by medical personnel on 17 occasions spanning a 3-month period: by Dr. Astone five times; by Dr. Gray twice; by Dr. Heaton three times; by an unidentified doctor and inmate nurse on the day of the injury; and by medical assistant Blunt six times. . . . The doctors diagnosed his injury as a lower back strain and treated it with bed rest, muscle relaxants and pain relievers. Respondent contends that more should have been done by way of diagnosis and treatment, and suggests a number of

**MEMORANDUM DECISION AND ORDER - 17**

options that were not pursued. The Court of Appeals agreed, stating: "Certainly an x-ray of (Gamble's) lower back might have been in order and other tests conducted that would have led to appropriate diagnosis and treatment for the daily pain and suffering he was experiencing." 516 F.2d, at 941. But the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court under the Texas Tort Claims Act. The Court of Appeals was in error in holding that the alleged insufficiency of the medical treatment required reversal and remand. That portion of the judgment of the District Court should have been affirmed.

429 U.S. at 97-98.

### B. *Undisputed Facts*

In January 2002, Plaintiff sustained a work injury to his left leg that resulted in chronic lymphedema and recurrent cellulitis to his left lower extremity. (Dkt. 30-3, pp.5-6.) Lymphedema is swelling that occurs in the arms or legs and is caused by a blockage to the lymphatic system which prevents lymphatic fluid from draining properly. (Dkt. 25-3, p.4.) There is no cure for lymphedema but it can be controlled. (*Id.*) When Plaintiff arrived at ISCI on January 13, 2011, he went through an initial screening process which included a review of his medical history and current medical conditions. (*Id.*) Plaintiff informed ISCI medical staff of his current medications, which were ordered continued, and of his lymphedema with recurring cellulitis. (*Id.*)

During the time period at issue in the Complaint, Defendant Lossmann was employed in two different roles at ISCI and SICI: he was the Idaho Regional Medical Director for Correctional Medical Services, Inc. (now known as Corizon) which only

MEMORANDUM DECISION AND ORDER - 18

consisted of administrative duties, and he was also an independent contract physician for

Corizon at these facilities, and in that role he provided medical care and treatment to

inmates, including Plaintiff. (*Id.,* p.2.) As one of the medical providers who treated

Plaintiff, Defendant Lossmann is personally familiar with the medical care and treatment

provided to Plaintiff. (*Id.*, p.3.)

Between Plaintiff's arrival at ISCI on January 13, 2011 and when he filed the

Complaint on October 6, 2011, Plaintiff's requests for, and the medical treatment

provided for his ongoing lymphedema and recurrent cellulitis by ISCI and SICI medical

staff and/or off-site specialists, were as follows:

(1) On January 18, 2011, Plaintiff was admitted to the infirmary because of an
"acute flare" of his lymphedema. (Dkt. 25-15, p.19.) Additional multipurpose
padding and compression bandages were ordered to help treat his condition. (*Id.*,
pp.20-21.) Plaintiff was seen and treated by various medical staff while in the
infirmary, including an evaluation by Dr. Lossmann on January 19, 2011. (Dkts.
25-6, p.22; 25-8, p.9; 25-15, pp.19, 22-31.) As part of that evaluation Dr.
Lossmann continued an order for Lasix, which is a diuretic used to address edema,
discharged Plaintiff from the infirmary, and ordered that he follow up in the
outpatient clinic in one week. (Dkt. 25-6, p.22.) Also on January 19, 2011, Plaintiff
submitted a Health Services Request Co-Pay Form requesting wide shoes because
of his lymphedema. (Dkt. 30-4, p.4.)

(2) On January 27, 2011, Plaintiff was evaluated and treated by Physician's
Assistant (PA) Cynthia Holmes. (Dkts. 25-6, p.20; 25-8, p.7.) She increased the
order of Lasix, ordered another follow-up visit in medical, and advised him to
elevate his legs against the wall, and to walk frequently for exercise. (Dkt. 25-8,
p.7.) She also advised him to wear his TED hose (compression stockings) to bed.
(*Id.*)

(3) On February 11, 2011, PA Holmes admitted Plaintiff to the infirmary after
determining that his left leg was not responding to the Lasix medication. (Dkt. 25-
8, p.6.) Plaintiff remained in the infirmary until February 15, 2011, during which
time he was treated by medical personnel who continued the order for Lasix, added

**MEMORANDUM DECISION AND ORDER - 19**

an order of potassium supplement and Ultram to be taken to alleviate the pain, ordered an x-ray, and also ordered that the leg be wrapped and unwrapped once a day to watch for signs of skin infection. (Dkts. 25-6, pp.19-20; 25-7, pp.28-29; 25-8, pp.1-5, 25-14, pp.15, 17-19; 25-15, pp.2-11.) Dr. Lossmann assessed Plaintiff on February 14, 2011 and continued his medications and ordered him to elevate and wrap his leg. (Dkt. 25-8, p.1.) Dr. Lossmann assessed Plaintiff the next day; Plaintiff had no complaints and showed decreased edema so he was given an antibiotic, instructed to continue using the bandages, and discharged from the infirmary. (Dkts. 25-6, p.19; 25-7, p.28)

(4) On or about February 16, 2011, Plaintiff provided ISCI medical staff with a list of supplies needed for treating his lymphedema, including bandages, wraps and gloves. (Dkt 25-15, p.16.)

(5) Plaintiff was admitted to the long-term unit of the infirmary on February 24, 2011 and discharged February 28, 2011. During this time, he received medical attention and treatment, including the application of ACE wraps, compression stockings, pain medication, ice, and daily leg inspections. (Dkts. 25-6, pp. 17-18; 25-7, pp.23-26; 25-14, pp.21-29; 25-15, pp.12-15, 17.)

(6) Dr. Lossmann evaluated Plaintiff at a follow-up visit on March 2, 2011. (Dkt. 25-7, p.22.) Dr. Lossmann noted Plaintiff's lymphedema had reduced 50% from his previous visit, updated Plaintiff's medical status report to allow him to have two bags of ice 2-3 times a day and to keep the gloves for leg bandaging, and noted that Plaintiff needed supplies for his lymphedema. (*Id.*; Dkt. 25-13, pp.25-26.) On March 9, 2011, Dr. Lossmann ordered bandages, wraps and gloves for Plaintiff's lymphedema. (*Id.*; Dkt. 25-6, p.16.)

(7) Plaintiff was next seen by PA Holmes on April 22, 2011 when he complained of increased edema and pain to the left leg. (Dkt. 25-7, p.20.) She noted that Plaintiff was not wearing the TED hose (compression stockings) continually as ordered, so she "strongly advised" him to wear them 24 hours a day unless showering. (*Id.*) She ordered pain medication and to check on the status of supplies previously ordered March 9, and that Plaintiff's ACE wraps be replaced when he returns the old ones. (Dkt. 25-6, p.14.)

(8) On May 3, 2011, Dr. Lossmann evaluated Plaintiff in the chronic care clinic. Dr. Lossmann noted that Plaintiff's lymphedema was very mild, that he had received the order for stockings but still needed gloves, and he modified Plaintiff's pain medication order. (Dkt. 25-14, p.4.)

**MEMORANDUM DECISION AND ORDER - 20**

(9) Plaintiff was evaluated and treated on May 5 and May 9, 2011 by ISCI medical staff, and admitted to the ISCI infirmary May 12, 2011 for 24-hour leg elevation. (Dkts. 25-7, pp.15,18; 25-6, p.12.) He was discharged the next day with directions to keep the leg elevated. (Dkt. 25-6, p.12.)

(10) Dr. Dawson evaluated Plaintiff on May 23, 2011 and noted "he has all supplies to wrap leg" and that Plaintiff was satisfied with the current treatment plan. The plan was to continue current medications and then decrease them as the leg improves. (Dkt. 25-7, p.12.)

(11) Plaintiff submitted a Health Services Request (HSR) form on June 15, 2011 and complained that "my feet are constantly sore from shoes. I need better shoes." (Dkt. 25-12, p.18.) PA Takagi assessed Plaintiff on June 27, 2011 and determined Plaintiff was wearing rubber boots at a new job in the dish pit along with shoes that were "sized to his feet when in lymphedema" that were rubbing his toes raw. Plaintiff was unwilling to quit his job and wanted a pair of laced shoes so he could run. PA Takagi ordered Plaintiff the special shoes in a smaller size and noted that "this will be a second pair" and that Plaintiff would "keep original pair to wear with lymphedema." (Dkt. 25-7, p.8.)

(12) Plaintiff was placed in segregation on July 7, 2011. (Dkt. 25-7, p.7.) A week later, on July 15, 2011, PA Mitchell evaluated Plaintiff's "very swollen" leg and noted that he was not allowed bandages while in segregation and they had not been returned to him yet. She further noted that she would work on finding new dressings, but Plaintiff would use old dressings until the new ones were obtained. (*Id.*, p.6.) On July 23, 2011, Plaintiff was provided with his lymphedema supplies (*Id.*, p.5.), and two days later per Plaintiff's request, ISCI medical staff ordered Plaintiff an additional stocking and checked on his special shoe order. (*Id.*)

(13) Plaintiff was evaluated and treated by ISCI medical staff on July 26 and July 29, 2011. (Dkt. 25-7, pp. 2-3.) The nurse noted no signs of infection, that Plaintiff would continue to wear wraps on his leg, and that he needed donning gloves to apply wraps. (*Id.*)

(14) Dr. Lossmann evaluated Plaintiff on August 2, 2011 who noted no signs of infection and continued Plaintiff's plan of care for his lymphedema and continued his current medications. (Dkt. 25-7, p.1.)

(15) On August 26, 2011, Plaintiff was evaluated and treated by ISCI medical staff. (Dkt. 25-6, p.30.) Plaintiff indicated he was not wearing his bandages all day, but only when he's not up and around, and that he used up all of his wraps in two

**MEMORANDUM DECISION AND ORDER - 21**

weeks' time. Plaintiff was given additional cotton underwraps and advised to wear his compression stocking and wraps during the day, even when he is up and around. (*Id.*)

(16) On September 2, 2011, a group of ISCI medical staff members, including Dr. Lossmann, conducted a Multi-Disciplinary Team Treatment meeting with Plaintiff. (Dkt. 25-6, p.29.) The meeting notes indicate Plaintiff was throwing away his compression supplies rather than re-using them "as is customary." Medical staff offered Plaintiff use of the washing machine in the medical unit, and noted that Elks Rehab had provided Plaintiff with enough lymphedema supplies to last six months. (*Id.*) Plaintiff requested outside physical therapy for specialized lymphedema therapy which the medical staff agreed to arrange. ISCI medical staff also offered Plaintiff the option to live in the long-term care clinic to help manage his condition with nursing staff. He refused. (*Id.*)

(17) On September 12, 2011, Plaintiff was transferred off-site to the Elks Wound Center for an initial assessment and treatment through manual lymphatic drainage of his lower left leg. (Dkt. 25-11, pp.17-21.) The Elks physical therapist recommended Plaintiff continue with lymphedema therapy and complete decongestive therapy through manual lymphatic drainage and compression bandaging. She recommended Plaintiff receive off-site treatment three times per week for two weeks, then two times per week for two weeks. (*Id.*, p.20) ISCI medical staff member PA Mitchell completed a consultation request in accordance with the Elks' recommended treatment plan. (Dkt. 25-11, p.16.)

(18) Plaintiff received off-site lymphedema treatment at Elks Wound Center on September 19, 23, 27, 28, and 30, 2011, and October 4 and 6, 2011. (Dkts. 25-5, p.5; 25-9, p.27; 25-10, pp.1, 3, 21-22; Dkt 25-11, p.8.)

(19) On September 19, 2011, Plaintiff signed a "receipt for medical product" acknowledging receipt of a pair of shoes. (Dkt. 30-4, p.5.)

(20) After Plaintiff filed his Complaint on October 6, 2011, he continued to be assessed and treated by ISCI medical staff and at off-site appointments at Elks Wound Center. (Dkts. 25-6, pp.25-26; 25-10, pp. 6,12-15; 25-11, p.1; 25-12, p.1; 25-13, pp.14, 31; 25-14, p.1.)

(21) Plaintiff continued to submit grievance forms regarding ISCI medical staff's treatment of his lymphedema in early 2012. (Dkt. 30-5, pp.4-6.) ISCI medical staff member Joseph P. Cardona RN responded to Plaintiff's grievance forms in a written memorandum addressed to Plaintiff on February 7, 2012. (*Id.*, pp.2-3.) In

the memorandum, RN Cardona acknowledged Plaintiff's "life-long challenge" with lymphedema, and that ISCI wants "the best patient care management possible to meet [Plaintiff's] ongoing lymphedema challenges." He addressed the care being provided to Plaintiff, his antibiotic therapy, the scheduling of off-site physical therapy, the care and cleaning of Plaintiff's leg wraps, and information on medication Plaintiff was taking. (*Id.*)

C. *Analysis*

Applying the standard of law to the undisputed facts in this case, the Court must now determine whether Plaintiff has shown that the medical care Defendant Lossmann provided to Plaintiff was "sufficiently harmful to evidence deliberate indifference to [Plaintiff's] serious medical needs." *Hudson*, 503 U.S. at 8. Defendant Lossmann contends that no genuine issue exists as to any material fact regarding the "appropriate and reasonable" medical care he and the other ISCI medical staff provided to Plaintiff. *See* Dkt. 25-3, p.12. Dr. Lossmann has provided the Court with his Affidavit and the complete medical record of Plaintiff in support of the undisputed facts herein. *See* Dkts. 25-3 through 25-15.)

Plaintiff contends, however, that Defendant Lossmann <u>was</u> deliberately indifferent when he "failed [to] follow Plaintiff's doctor's ordered treatment . . . [who] was a specialist in this field [and instead] chose to do nothing." (Dkt. 30-2, p.4.) He further contends that Defendant Lossmann "delayed and denied Plaintiff treatment for his serious medical condition" and that "Plaintiff's health and physical conditions have not been evaluated, assessed, or treated in a medically reasonable manner." (*Id.*, p.7.) Plaintiff makes these statements in his responsive pleadings to Defendant Lossmann's Motion for

**MEMORANDUM DECISION AND ORDER - 23**

Summary Judgment (*see* Dkt. 30-2), but Plaintiff does not properly support his assertions of fact, nor does he properly address Defendant Lossmann's assertions of fact. As a result and pursuant to Federal Rule 56(e), the Court will consider the facts set forth by Defendant Lossmann as undisputed and grant Defendant Lossman's Motion for Summary Judgment for the following reasons.

As discussed above, in order for Defendant Lossmann to be deliberately indifferent to Plaintiff's medical condition, the Supreme Court has held that a prison official needs to know of and disregard the plaintiff's serious medical condition. *Farmer*, 511 U.S. at 838. Defendant Lossmann's knowledge of Plaintiff's lymphedema and recurring cellulitis is not disputed, and although such a medical condition may satisfy the Ninth Circuit's requirement of a "serious medical condition" because it is an injury that "a reasonable doctor or patient would find important and worthy of comment or treatment" and at times "significantly affects [Plaintiff's] daily activities," *see McGuckin*, 974 F.2d at 1059-60, Plaintiff has not satisfied his burden of establishing a materially factual issue that Defendant Lossmann disregarded this serious medical condition. In support of Plaintiff's assertions that Defendant Lossmann "chose to do nothing" and "delayed and denied Plaintiff treatment" (*see* Dkt. 30-2, pp.4-5), Plaintiff provided the Court with a prison grievance form he filed in August 2011 wherein he requested treatment from a lymphedema specialist, a January 2011 health services request form requesting a pair of wide shoes, a September 2011 medical product form acknowledging receipt of a pair of shoes, a Lymphedema Assessment dated November 28, 2011 that was prepared by the

**MEMORANDUM DECISION AND ORDER - 24**

lymphedema specialist at St. Lukes-Elks Rehab, several grievance forms submitted in

January and February 2012 regarding treatment of Plaintiff's lymphedema, and Nurse

Cardona's February 7, 2012 memo in response to those grievance forms. (*See* Dkts. 30-4,

30-5, 30-6.)

These documents, however, are insufficient to create a genuine issue of material

fact as to whether Defendant Lossmann disregarded Plaintiff's serious medical condition.

Indeed, while these documents establish Plaintiff's ongoing requests for treatment of his

lymphedema (and special shoes), the Court has carefully considered these documents

along with Plaintiff's undisputed medical records and finds that during the nine-month

period at issue, ISCI medical staff, including Defendant Lossmann, consistently

responded to Plaintiff's requests for medical treatment and did so in a reasonable and

medically appropriate manner. Plaintiff was treated a minimum of 29 times, including

seven separate visits to or with Defendant Lossmann. At each of the visits with Defendant

Lossmann, Defendant Lossmann made a medical determination as to the appropriate

course of treatment, and provided appropriate and reasonable medical care that "did not

deviate from the standards of care as that care is defined in Boise, Idaho in 2011." (Dkt.

25-3, p.12.) In addition, Plaintiff requested special medical supplies such as wraps, ice,

compression bandages and gloves to help manage and treat his lymphedema, which ISCI

medical staff and/or Defendant Lossmann ordered and provided to Plaintiff. Plaintiff

requested special shoes to accommodate his lymphedema and received two pair in

**MEMORANDUM DECISION AND ORDER - 25**

different sizes according to the undisputed facts herein.[4] Throughout the nine-month

period at issue, ISCI medical staff continued, monitored and adjusted all of the

medications Plaintiff was taking prior to his incarceration, including those prescribed for

his lymphedema condition. Finally, per Plaintiff's request, he was seen and treated

multiple times by a lymphedema specialist at the off-site Elks Wound Clinic. *See*

*Toguchi*, 391 F.3d at 1061 (summary judgment appropriate if defendants show that

medical personnel have been consistently responsive to inmate's medical needs and there

is no showing that such personnel had subjective knowledge and conscious disregard of a

substantial risk of serious injury).

  The only other evidence Plaintiff has submitted in an attempt to create a genuine

issue of material fact are previous medical records showing that he was hospitalized three

different times 8-10 years ago for his recurring lymphedema. (Dkt. 30-3, pp.5-13.)

Plaintiff contends that these records show that Defendant Lossmann "failed [to] follow

Plaintiff's doctor's ordered treatment." (Dkt. 30-2, p.4.) Assuming arguendo that these

records somehow show that ISCI medical staff, including Defendant Lossmann, did not

follow the same plan of care for Plaintiff's lymphedema as staff members prescribed at a

---

  [4]Although Plaintiff submitted a written request for special shoes in January 2011, then signed a receipt for medical product acknowledging his receipt of a pair of shoes in September 2011 and wrote on the receipt form that it was "eight months to the day, to get shoes!" (*see* Dkt. 30-4, p.5), Plaintiff's argument is belied by PA Takagi's written progress notes dated June 27, 2011. According to PA Takagi's notes, Plaintiff was already wearing a special shoe sized to fit his feet "when in lymphedema" and so PA Takagi submitted an order for a <u>second</u> pair of smaller-sized special shoes for Plaintiff, which is the pair he presumably received in September 2011. (*See* Dkt. 25-7, p.8.)

**MEMORANDUM DECISION AND ORDER - 26**

hospital 8-10 years ago, that claim is nothing more than a difference in medical judgment which is simply not actionable under the Eighth Amendment. *Estelle*, 429 U.S. at 97-98; *see also Sanchez*, 891 F.2d at 242. At most, Plaintiff might allege that ISCI medical staff's occasional delays in providing him with his requested medical supplies or the purported delay in being sent to an off-site lymphedema specialist constitutes medical malpractice or negligence, but the appropriate forum for either of those claims is state court. *See Estelle*, 429 U.S. at 97-98. In reality, despite the many treatment options already afforded Plaintiff and that may be provided to him in the future, Plaintiff will likely continue to struggle with his lymphedema and recurring cellulitis as so many other people do in the outside world. But that outcome does not equate to or constitute a deliberate indifference claim under the Eighth Amendment.

After a thorough review and consideration of the parties' arguments and the undisputed facts in the record, the Court concludes that Plaintiff has failed to establish any issue of material fact regarding his claim that Defendant Lossmann was deliberately indifferent in his treatment of Plaintiff's lymphedema and recurring cellulitis. Accordingly, Defendant Lossmann's Motion for Summary Judgment will be granted.

## CONCLUSION

To summarize the rulings herein, the Court will grant in part and deny in part Plaintiff's Motion for Extension of Time, deny Plaintiff's Motion for Rule 56(f) Stay and Compel Discovery, deny Plaintiff's Motion for Addendum, or Addition, to Defendant List and Plea to Court for This Plaintiff's Health and Life and grant judgment sua sponte

**MEMORANDUM DECISION AND ORDER - 27**

in favor of the unserved Jane and John Doe defendants, and grant in part and deny in part Plaintiff's Motion for Court to Make It's Decision on Summary Judgment. Finally, the Court will grant Defendant Lossmann's Motion for Summary Judgment.

### ORDER

**IT IS ORDERED:**

1.     Defendant Lossmann's Motion for Summary Judgment (Dkt. 25) is **GRANTED**.

2.     Plaintiff's Motion for Extension of Time (Dkt. 28) is **GRANTED in part** for Plaintiff to have had additional time to file his response to Defendant Lossmann's Motion for Summary Judgment, and **DENIED in part** to the extent Plaintiff requests additional discovery from Defendant Lossmann.

3.     Plaintiff's Motion for Rule 56(f) Stay and Compel Discovery (Dkt. 30) is **DENIED**.

4.     Plaintiff's Motion for Addendum, or Addition, to Defendant List and Plea to Court for This Plaintiff's Health and Life (Dkt. 36) is **DENIED** and judgment is granted sua sponte in favor of the unserved Jane and John Doe defendants.

5.     Plaintiff's Motion for Court to Make It's Decision on Summary Judgment (Dkt. 38) is **GRANTED in part** to the extent the Court has issued its ruling on Defendant Lossmann's Motion for Summary Judgment herein, and **DENIED in part** regarding Plaintiff's additional allegations of inadequate

**MEMORANDUM DECISION AND ORDER - 28**

medical care against unnamed prison medical staff.



DATED: July 11, 2013

Honorable Mikel H. Williams
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 29**